SUPERIOR COURT OF DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Dianne Tan,<br><br>    *Plaintiff*,<br><br>v.<br><br>Compass Group USA, Inc.<br><br>    *Defendant*. | Civil Action No. **2022-CAB-005621**<br><br>**COMPLAINT AND JURY DEMAND**<br><br>**Party's Name**: Dianne Tan<br>**Party's Address**: 4804 Cherokee Street, College Park, MD 20750 |

Plaintiff Dianne Tan, by her attorneys, EISENBERG & BAUM, LLP, as and for her Complaint against Defendant, states as follows:

1. In 2021 and 2022, Plaintiff Dianne Tan was an employee of Defendant Compass Group USA, Inc. ("Compass"), which provided food and dining services at Gallaudet University.

2. During her employment, Plaintiff was preyed upon, manipulated, sexually harassed, and sexually assaulted by Compass's Catering Manager Yvon Cene and Compass's grill staff Arturo Cordova.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this claim pursuant to D.C. Code §§ 11-921 and 2-1403.16

4. This Court has personal jurisdiction over Defendant pursuant to D.C. Code §§ 13-422 and 13-423.

5. Venue is proper in this Court as the acts and/or omissions alleged in this Complaint occurred in the District of Columbia. Moreover, Defendant is found in, resides, or transacts business in the District of Columbia. Venue is also proper as Plaintiff's claims involve one or more

1

common questions of fact that arise from Defendant's conduct occurring in the Washington, D.C. metropolitan area.

## PARTIES

6. Plaintiff Dianne Tan is an individual residing in College Park, Maryland.

7. Defendant Compass Group USA, Inc., is a corporation located at 2400 Yorkmont Road, Charlotte, NC 28217. Defendant is registered to do business in the District of Columbia with a service address at 1090 Vermont Avenue, NW, Washington, D.C. 20005.

## FACTS

8. Defendant Compass Group USA, Inc. owns and/or operates food and dining services called "Bon Appetit" at Gallaudet University, a prestigious university for students who are deaf or hard of hearing.[1]

9. Plaintiff Dianne Tan is a deaf individual who communicates primarily in American Sign Language ("ASL").

10. Ms. Tan, through Compass, began working for "Bon Appetit" at Gallaudet University in or around August 2021 as a cook.

### Defendant Yvon Cene's sexual misconduct

11. While Ms. Tan was employed with Bon Appetit, Yvon Cene was Bon Appetit's Catering Manager who managed and/or supervised Ms. Tan.

12. Cene is a deaf individual who speaks ASL, and Ms. Tan and Cene communicated with each other in ASL.

13. Since September 2021, Cene began a campaign of unwanted sexual harassment and assault against Plaintiff. His conduct included, but is not limited to, the following:

---

[1] *See* https://gallaudet.edu/.

a. Cene sometimes asked Ms. Tan for help at work so that he could drive her home. One day, when Cene was driving Ms. Tan to her house after work, Cene touched Ms. Tan's thigh against her will. Ms. Tan pushed his hand away and told Cene that they are both married and that he should respect his wife. Cene then parked his car and insisted that Ms. Tan have sex with him. She firmly refused and insisted to get back to her home. Cene then drove her home. Ms. Tan was frustrated and scared. This conduct was harmful, offensive and unwanted. After this incident, Ms. Tan never drove home with Cene.

b. Another day at work, Cene and Ms. Tan took an elevator together. As soon as the elevator door closed, Cene came close to Ms. Tan and she asked him to stop. But Cene did not stop and pushed his body against Ms. Tan. He then put his hands on the elevator wall so she could not move. Ms. Tan felt his penis against her and she struggled to back off, but she was stuck. Ms. Tan begged Cene to stop. He did not stop. He then put his face close to her face and she had to turn away her face with closed eyes. Finally, the elevator door opened, and Cene turned his back and left. Ms. Tan walked shakingly in front of him. Ms. Tan was frustrated and scared. Subsequently, Cene asked Ms. Tan if she felt his penis. Ms. Tan felt offended and disgusted. She did not answer Cene. Cene also told Ms. Tan that "I watch you, you know what I mean."

c. Cene made inappropriate sexual comments to her at work. When Ms. Tan asked Cene for instructions regarding work, Cene would say "I want sex" or "give me sex, and I'll share more information with you."

d. Cene also made comments like "I saw your Facebook" and "beautiful." Ms. Tan felt uncomfortable and immediately blocked his account on Facebook.

e. Ms. Tan refused all of Cene's sexual advances., Cene then began to complain about Ms' Tan's work performance,, and reported her alleged negative work performance several times.

f. At other times, Cene watched Ms. Tan in a creepy manner. A few of her coworkers told her that Cene had been following her at work even during her break. This made Ms. Tan very uncomfortable.

g. Upon information and belief, Cene inappropriately "grinded" on another employee and rubbed her back. Someone reported this incident to a manager, but the manager made it like nothing happened.

14. Ms. Tan had to miss work due to stress, anxiety, humiliation, and other emotional distress from this sexual abuse.

15. On or about November 7, 2021, Ms. Tan text messaged Marcy Knox, Defendant's general manager about Cene: "I'd be happy to do backup if [Yvon Cene] stops keeping his eyes on me all the times. I won't forget what he did to me physically at mssd elevator over a month ago which was not acceptable." Marcy did not reply to this message. Nor did Marcy follow up with Ms. Tan to figure out about what had happened with Cene.

16. On or about November 19, 2021, Ms. Tan reported Cene's sexual misconduct to another manager, Richard Mercado, around Thanksgiving 2021.

17. Soon after she reported Cene's sexual misconduct, many of her colleagues at work became aware of the reporting. Ms. Tan was shocked because the report was to be kept

confidential. Some of her colleagues, including Arturo Cordova, tried to convince her to drop the complaint against Cene.

18. In retaliation for reporting his misconduct, Cene criticized and spread rumors about Ms. Tan. Cene talked behind her back, stalked, followed, and tried to contact her multiple ways through other people.

19. On or about December 4, 2021, Ms. Tan reported Cene's sexual abuse to the Gallaudet University Department of Public Safety.

20. On or about January 14, 2022, Ms. Tan emailed Washington D.C. detective to file a formal police report about Cene's sexual misconduct.

21. On January 19, 2022, this Court issued an Anti-Stalking Order against Cene, ordering him to stay at least 100 yards away from Ms. Tan.

22. Defendant did not transfer Cene to another location even after Ms. Tan reported about his sexual misconduct. Cene was finally transferred to another location after January 19, 2022.

**Defendant Arturo Cordova's sexual misconduct**

23. While Ms. Tan was employed with Bon Appetit, Arturo Cordova was Bon Appetit's grill staff.

24. Cordova is also a deaf individual who speaks ASL, and Ms. Tan and Cordova communicated with each other in ASL.

25. Ms. Tan and Cordova worked the same days and hours.

26. Between September and November of 2021, Cordova sexually harassed and assaulted Ms. Tan. His conduct included, but is not limited to, the following:

    a. One day at work, Cordova touched Ms. Tan's shoulders twice from the back against her will. Ms. Tan was angry and felt uncomfortable. Cordova kept following Ms. Tan and signed in ASL, "sexy." Ms. Tan felt creepy and did not respond.

    b. On multiple occasions, Cordova repeatedly asked Ms. Tan about her marital status.

    c. Cordova signed "I love you" to Ms. Tan several times.

    d. Cordova told Ms. Tan that he saw her pictures. Cordova signed in ASL that she has "beautiful smile, sexy." Ms. Tan felt disturbed, shocked, and speechless.

    e. Upon information and belief, Cordova also sexually harassed another staff by asking sex for money. Upon information and belief, Cordova is being sued by his ex-girlfriend for domestic abuse. Upon information and belief, on or about November 14, 2022, Cordova was arrested at Gallaudet University on charges of rape.

27. On or about January 23, 2022, Cordova again continuously asked Ms. Tan about her marriage and citizenship at work. Ms. Tan felt violated and told him that it is not his business. But Cordova kept asking and she had to walk away. She reported the incident to her manager.

28. On January 24, 2022, Ms. Tan also reported Cordova's sexual abuse to the Gallaudet University Department of Public Safety.

29. Cene and Cordova's sexual misconduct caused Ms. Tan to suffer humiliation, anger, frustration, stress, anxiety, and emotional distress.

30. Because of everything that had happened to her and because of the extreme frustration and emotional distress, Ms. Tan stopped working for Bon Appetit and Compass in May 2022.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Sexual Harassment: Hostile Workplace)**

31. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

32. The D.C. Human Rights Act, D.C. Code § 2-1402.01, *et seq.*, makes it unlawful for an employer to harass or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment based on the individual's sex.

33. During Plaintiff's employment, Defendant harassed and subjected Plaintiff to hostility and harassment that was not only severe, but also pervasive, that affected the terms, conditions, or privileges of her employment, and created a hostile work environment in violation of the D.C. Human Rights Act. Cene and Cordova's sexual abuse of Plaintiff created a sexually hostile work environment. Cene and Cordova's sexual abuse of Plaintiff was severe and pervasive. Plaintiff dealt with their sexually abuse on a regular basis.

34. Plaintiff deserved to retain her employment free of sexual harassment with Defendant and did not do anything to experience hostile work environment. Nevertheless, Defendant denied Plaintiff the benefits of employment, including all favorable conditions and emoluments thereof and created and allowed to exist a hostile, intolerable workplace based on sexual harassment that imposed upon her by the conduct of their employees and managers, of which they were well aware of and without any non-discriminatory basis therefore, and made their workplace intolerable.

35. Defendant's actions were taken under circumstances giving rise to an inference of discrimination. Defendants are liable for the discriminatory acts of their individual managers and/or supervisors and/or employees and are liable for aiding and abetting acts of harassment, discrimination, and retaliation carried out by them.

36.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Gender Discrimination)

37.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

38.     The D.C. Human Rights Act, D.C. Code § 2-1402.01, *et seq.*, make it unlawful for an employer to harass or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment based on the individual's sex.

39.     Plaintiff deserved to retain her employment free of gender discrimination with Defendant and did not do anything to experience discriminatory treatment at work. Nevertheless, Defendant denied Plaintiff the benefit of employment, including all favorable conditions and emoluments thereof, and created and allowed to exist a hostile, intolerable workplace because of hostility to Plaintiff based on her gender (female) and without any non-discriminatory basis thereof. Other employees who were male were not subject to the same acts of discrimination.

40.     Defendant's actions were taken under circumstances giving rise to an inference of discrimination. Defendant is liable for the discriminatory acts of its individual managers and/or supervisors and/or employees and is liable for aiding and abetting acts of harassment, discrimination carried out by them.

41.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future

wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Aiding and Abetting)

42. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

43. The D.C. Human Rights Act makes it "an unlawful discriminatory practice for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under" the Act. D.C. Code §2-1402.62.

44. Defendant knew, or should have known, about Cene and Cordova's discriminatory and sexually hostile conduct in violation of the D.C. Human Rights Act and failed to stop them.

45. Defendant knew, or should have known, that Cene and Cordova behaved in a dangerous or otherwise incompetent manner given their history of sexual misconduct in the workplace.

46. It was foreseeable to Compass that the failure to train, monitor, and supervise its employees, including Cene and Cordova, would result in the sexual misconduct and/or cause harm to its employees, such as Plaintiff. It was further foreseeable to Compass that its retention of Cene and Cordova, as well as its failure to supervise them, would result in sexual misconduct and/or cause harm to its employees, such as Plaintiff.

47. Defendant unlawfully aided and abetted the discriminatory and sexually hostile conduct by Cene and Cordova.

48. Defendant's actions were taken under circumstances giving rise to an inference of discrimination.

49. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Negligent Training, Supervision, and Retention)

50. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

51. Defendant had a duty to train its employee and to supervise its employees. Compass breached its duty to exercise reasonable care by acting negligently and recklessly. Such failures include, but are not limited to, the following:

a. Failing to provide formal training on sexual misconduct in the workplace;

b. Failing to adopt policies to prevent sexual misconduct;

c. Failing to adopt policies to receive and process complaints of sexual misconduct;

d. Failing to discipline employees for sexual misconduct;

e. Failing to properly monitor the workplace to ensure that it was free from sexual misconduct;

f. Failing to provide avenues for employees to complain of sexual misconduct or improper workplace conduct;

g. Failing to properly respond to complaints of sexual misconduct or improper workplace conduct;

h. Failing to properly train, supervise, or discipline Cene and Cordova;

i. Failing to properly investigate complaint of sexual misconduct.

52. Defendant knew, or should have known, that Cene and Cordova behaved in a dangerous or otherwise incompetent manner given their history of sexual misconduct in the workplace.

53. It was foreseeable to Compass that the failure to train, monitor, and supervise its employees, including Cene and Cordova, would result in the sexual misconduct and/or cause harm to its employees, such as Plaintiff. It was further foreseeable to Compass that its retention of Cene and Cordova, as well as its failure to supervise them, would result in sexual misconduct and/or cause harm to its employees, such as Plaintiff.

54. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future

wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief against the Defendant:

1. Enter a declaratory judgment, stating that Defendant's practices, policies and procedures subjected Plaintiff to sexual harassment, gender discrimination, making her work environment a hostile workplace in violation of the D.C. Human Rights Act.

2. As to all Causes of Action, enter judgment against Defendant and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, nominal damages, attorneys' fees, pre and post-judgment interest, in an amount, in excess of the jurisdictional limits of any other court, to be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable and proper.

Dated: November 30, 2022

        Respectfully submitted,

        EISENBERG & BAUM, LLP

        By: /s/ Adriana Alcalde_____
        Adriana R. Alcalde, Esq. (DC Bar No. 1656434)
        Andrew Rozynski, Esq. (NY Bar No. 5054465, seeking admission *pro hac vice*)
        24 Union Square East, Penthouse
        New York, NY 10003
        Tel: (212) 353-8700
        AAlcalde@eandblaw.com
        ARozynski@eandblaw.com
        *Attorneys for Plaintiff*